IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CURTIS J. YOUNGBLOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05cv1115-CSC |
| | ) | (WO) |
| JO ANNE BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Curtis J. Youngblood ("Youngblood"), applied for disability insurance

benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. and for

supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C.

§ 1381 et seq., alleging that he was unable to work because of a disability. His application

was denied at the initial administrative level. The plaintiff then requested and received a

hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also

denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's

decision consequently became the final decision of the Commissioner of Social Security

(Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is

now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). The parties

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

have consented to the United States Magistrate Judge conducting all proceedings in this case

and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala.

LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties,

the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment[2] which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11ᵗʰ Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11ᵗʰ Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11ᵗʰ Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11ᵗʰ Cir. 1987).

### III.  The Issues

**A.  Introduction**.  The plaintiff was 45 years old on the date of onset (R. 16) and 47 years old at the time of the ALJ's decision.  (R. 16E).  He completed the tenth grade.  (*Id*.). Youngblood's prior work experience includes work as a building maintenance worker,

---

[3]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

construction worker, chain saw operator, and tire changer.  (R. 16K).  Following the hearing, the ALJ concluded that Youngblood has severe impairments of status postsubtrochanteric fracture, generalized osteoarthritis, mild scoliosis, right inguinal hernia, and hypertension. (R. 16I, 16L).  The ALJ concluded that Youngblood was unable to perform his past relevant work, (R. 16K), but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework, concluded that there were significant number of jobs in the national economy that he could perform.  (R. 16L).  Accordingly, the ALJ concluded that Youngblood was not disabled.  (*Id*.).

**B.  Plaintiff's Claims.**  The plaintiff presents two issues for the Court's review.   As stated by Youngblood, the issues are

> 1.      Whether the ALJ improperly rejected the opinion testimony of both the treating and consultative medical sources.

> 2.      Whether the ALJ properly applied the Eleventh Circuit pain standard to the claim.

(Mem. of Law in Supp. of Pl's Argument at 1).

### IV.  Discussion

**1.  Whether the ALJ improperly rejected the opinion testimony of both the treating and consultative medical sources.**  The plaintiff contends that the ALJ improperly rejected the consultative examiner's opinion that he was incapable of performing even sedentary work. ((Mem. of Law in Supp. of Pl's Argument at 5).  According to Youngblood, he is unable to work due to pain.  (R. 55).  Specifically, he complains that he has pain in his

4

left hip and right knee, whiplash, and a hernia.[4]  (*Id*.)

On November 23, 1991, Youngblood suffered a fracture to his left hip in an automobile accident.[5]  (R. 88).  On July 19, 2000, Youngblood was brought to the emergency room after being assaulted by two men.[6]  X-rays revealed a fracture over the 5th and 6th ribs.  (R. 106).  He reported being kicked several times in his side.  He was admitted to the hospital due to blood in his urine.  (*Id*.)  He was discharged on July 21, 2000, "feeling much better."  (R. 107).  He was directed to follow up with Dr. Aguilar in one week.  (R. 107).  On July 28, 2000, Youngblood complained to Dr. Aguilar of "on and off pain" on his right side.  (R. 94).  He denied any other complaints.  (*Id*.)

On September 17, 2001, Youngblood presented to Dr. Aguilar requesting an "x-ray for job purpose."  (R. 94).  The treatment notation indicates that he could "stand well" and that he had no other complaints.  (*Id*.)  An x-ray on September 17, 2001 revealed the following.

> A bone screw is in place.  Well healed fracture along the intertrochanteric region is present.  There are no acute fractures identified.  Joint space is

---

[4]  Although Youngblood alleged that he had problems thinking, he alleges no facts in support of this claim and his brief contains no discussion of the law as it relates to a claim of mental impairment.  It is not the court's responsibility to seek out facts in support of the plaintiff's position; rather, the burden is on the parties to formulate arguments and present facts in support of their positions.  *See generally Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994).  The court concludes that the plaintiff has abandoned any claim of disability related to a mental impairment.

[5]  Apparently, Youngblood was a passenger in the vehicle and was not wearing his seat belt at the time of the accident.  (R. 88).  Youngblood told paramedics that he "drank approximately one pint of gin prior to the accident."  (*Id*.)

[6]  A treatment note indicates that Youngblood was "allegedly assaulted by 2 men over some "drugs" disagreement."  (R. 104).

maintained.

OPINION: PREVIOUS SURGERY, BUT THERE ARE NO ACUTE
FRACTURES NOTED.

(R. 99). There is no record of Dr. Aguilar seeing or treating Youngblood again.

On April 21, 2003, Youngblood underwent a consultative physical examination by Dr.

Willis Crawford. (R. 123). Youngblood's chief complaint was left hip pain.[7] (*Id*.). Dr.

Crawford conducted a physical examination, and noted that Youngblood "does limp giving

to his left lower extremity," and he has a small right inguinal hernia. (R. 126). Dr. Crawford

also noted that there was no swelling or stiffness at Youngblood's joints. (*Id*.). Dr.

Crawford described Youngblood's motor strength as follows.

> His motor strength is considered to be 5 out of 5. He is able to Tandem walk
> but limps during this. He is unable to walk on his heels or toes nor hop. He
> gets on the exam table with a bit of a struggle. . . . He does have a particular
> affected left lower extremity. He does not use any device to assist him in
> walking.

(*Id*.).

X-rays indicated "an old fracture of the left hip. A nail traverses the fracture. The

joint space is visualized. There is an irregularity of the femoral tuberosity." (R. 128).

Youngblood had a decreased range of motion in his back, hips and neck. (R. 129). Dr.

Crawford's impressions included a history of fracture to left hip, postoperative repair;

generalized arthritis; right inguinal hernia; and hypertension. (R. 127). Nonetheless, Dr.

---

[7] Specifically, Dr. Crawford noted that "[a]t the present time, he has a lot of pain in his left hip and
he has learned that he is unable to stand for any length due to the onset of pain in the hip." (R. 123)

Crawford opined that "[t]his man does not currently possess the usual related activities such as standing, walking, lifting, carrying, and handling objects."  (*Id*.)

On June 29, 2004, Youngblood underwent a second consultative physical examination by Dr. Crawford.  (R. 138).  Youngblood complained of left hip pain, low back pain, arthritis in his right hand and a hernia.  (*Id*.)  Dr. Crawford conducted a physical examination, and noted that Youngblood "ambulates with difficulty  mainly because of the chains that are on his ankles."  (R. 140).  Dr. Crawford also noted that there was no swelling or stiffness at Youngblood's joints.  (R. 141).  Dr. Crawford described Youngblood's motor strength as follows.

> General motor strength is 5 out of 5.  He is able to tandem walk and heel toe walk but not hop.  He can squat and stand and get on the exam table without any assistance. . . .  He does not have any particular affected left lower extremity that is easily noticeable and does not use any device to assist him in walking.

(*Id*.).  A blood test for rheumatoid arthritis was negative.  (R. 143).  He had a decreased range of motion in his back and hips.  (R. 144).

X-rays revealed "mild osteoarthritic changes in the L4-5 and L5-S1," and "no evidence of movement of the plate or screws in the femur."  (R. 145).  Dr. Crawford's impressions included essential hypertension, right inguinal hernia, generalized osteoarthritis, fracture of the left femur, postoperative repair, and low back pain.  (*Id*.).  Dr. Crawford opined that "[t]his man has the work-related activities such as sitting,  standing, walking, and lifting light loads only."  (*Id*.)

7

Nonetheless, Dr. Crawford completed a residual functional capacity form in which he indicated that the plaintiff could stand for 2 hours, walk for 1.5 hours, and sit for 4 hours. (R. 146).

The ALJ accorded minimal weight to the opinion of Dr. Crawford, the consultative physician, because his functional capacity evaluation was "based primarily on the claimant's subjective complaints." (R. 16I).  Contrary to Youngblood's assertion that Dr. Crawford relied on his consultative examinations, x-ray interpretation and range of motions studies to complete the residual functional capacity form, Dr. Crawford clearly indicated that he "completed this form based primarily on the claimant's subjective complaints." (R. 148). The plaintiff's argument is purely speculative and disingenuous, particularly in light of his concession that Dr. Crawford did indicate on the form that his residual functional capacity evaluation was based on the plaintiff's subjective complaints. ((Mem. of Law in Supp. of Pl's Argument at 6).  Next, and perhaps more important, a review of the ALJ's decision demonstrates that the ALJ conducted a thorough analysis of the testimony and considered all of the objective medical evidence in reaching his decision.

The ALJ found that the plaintiff "retains the residual functional capacity to perform the exertional demands of sedentary work with a sit/stand option." (R. 16K).  The ALJ also found that Youngblood was limited by non-exertional limitations. (*Id*.)  These findings are supported by substantial evidence and are consistent with the evidence in the record.  The court concludes that the ALJ properly discredited Dr. Crawford's opinion about

8

Youngblood's residual functional capacity and substantial evidence supports the ALJ's decision.  This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards.  *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

    **2.  Whether the ALJ properly applied the Eleventh Circuit pain standard to the claim.**  According to Youngblood, his pain is so intense he cannot work.  (R. 191-194).  As explained more fully below, the ALJ did not credit this testimony.  Youngblood argues that the ALJ failed to properly apply the law of this circuit to discredit his pain testimony.

> Plaintiff submits that based on the substantive medical evidence of record, both the subjective and objective findings of the claim meet the requirements of the pain standard.  Dr. Crawford's thorough examinations of Plaintiff included x-ray evidence and limitation of motion examinations upon which he based his conclusions that Plaintiff was visited by chronic pain and incapable of performing an eight-hour day of work based on the pain he experienced from his documented impairments.

(Mem. of Law in Supp. of Pl's Argument at 9).  Beyond this broad, conclusory statement, Youngblood alleges no facts and points to no evidence in the record in support of his position.  The burden is on the plaintiff to demonstrate that the Commissioner's decision is not supported by substantial evidence, and the argument of counsel is insufficient to meet this burden.

    More importantly, however, the court concludes that the ALJ properly discounted the plaintiff's testimony of pain.  The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his or her own testimony of

pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553.

In this case, the ALJ discredited the plaintiff's testimony of disabling pain as being disproportionate to the evidence in the record. (R. 16J). "The claimant has an underlying medically determinable impairment that could reasonably cause pain but not to the extent alleged." (*Id.*). The ALJ concluded that there were no objective signs or diagnostic studies demonstrating a condition which could be expected to produce the severe and intense pain about which the plaintiff complains. (*Id.*)

> Moreover, despite the allegedly disabling pain and functional limitations, there is little evidence of medical treatment. . . . The claimant has not required any hospitalization, any referrals to a specialist, and no prescribed medication on a regular basis. He has had no doctor's visits or emergency room visits related to his alleged impairments after September 17, 2001.

(R. 16J-19K).

10

The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. The ALJ's reasons for discrediting the plaintiff's testimony of pain and disability were both clearly articulated and supported by substantial evidence. *Id.* The ALJ was justified in relying on the lack of treatment and lack of pain medication as sufficient reasons to discredit the plaintiff's testimony of disabling pain. *See Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986) (Absence of treatment is a valid reason for discrediting a plaintiff's testimony of pain.) After a careful review of the record, the court concludes that the ALJ properly discounted the plaintiff's testimony of pain. The objective medical evidence of record, which was amply reviewed by the ALJ, does not reveal a medical condition of such severity that it could reasonably give rise to the plaintiff's alleged complaints. *See Brown v. Sullivan*, 921 F.2d 1233, 1235-36 (11th Cir. 1991). The ALJ articulated adequate reasons for discrediting the plaintiff's testimony that he cannot work due to disabling pain.

## V.  Conclusion

The court has carefully and independently reviewed the record, and concludes that the decision of the Commissioner is supported by substantial evidence.

A separate order will issue.

Done this 7th day of August, 2006.

           /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

11